UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

148 HIGH STREET, LLC,
　　　Plaintiff,

　　　v.

WESCO INSURANCE
COMPANY,
　　　Defendant.

C.A. No. 1:23-CV-12008-WGY

**PLAINTIFF'S OPPOSITION AND CROSS-MOTION IN RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## CONTENTS

Table of Authorities ................................................................................................................ ii

**Introduction** ......................................................................................................................... 1

    **I.**     **SUBSTANTIVE LAW** .......................................................................................... 3

    **II.**     **FACTS** ................................................................................................................ 5

        **A) Background** ................................................................................................. 5

        **B) The Policy** .................................................................................................. 6

        **C) The Declarations** ........................................................................................ 7

        **D) The Challenge of Locating and Interpreting the Causes of Loss Special Form** ......... 8

    **III.**     **LEGAL ARGUMENT** ........................................................................................ 9

        **A) Basic Coverage for Water Damage** ................................................................ 9

            (i)     The Case for Coverage ................................................................................. 9

            (ii)     Reasonable Insureds Would *Not* Perceive "Water Damage: Meeting the Criteria for Coverage Under Section G(2)(c)(1) As Being "Otherwise Excluded" by the "Water Exclusion" ......................................................................................... 11

            (iii)     The "Wear and Tear Exclusion" Does *Not* Apply to Water Damage ................. 13

        **B) Expanded Coverage for Sewers, Drains, and Sumps Without Breaking Apart or Cracking** ................................................................. 14

**Conclusion** ....................................................................................................................... 16

i

## TABLE OF AUTHORITIES

**Case**                                                                                                         **Pages**

Boazova v. Safety Ins. Co.,

462 Mass. 346, 350, 968 N.E.2d 385 (2012) ...................................................................................3

Chatham Pharmaceuticals v. Angier Chem. Co.,

347 Mass. 208, 211, 196 N.E.2d 852 (1964) ................................................................................10

Dorchester Mut. Ins. Co. v. Krussell,

485 Mass. 431, 437, 150 N.E.3d 731 (2020) .............................................................................3, 13

Hakim v. Mass. Insurers' Insolvency Fund,

424 Mass. 275, 281, 675 N.E.2d 11611 (1997) .......................................................................4, 11, 13

Harborview Res. Comm., Inc. v. Quincy Hous. Auth.,

368 Mass. 425, 432, 332 N.E.2d 891 (1975) ................................................................................10

Hazen Paper Co. v. U.S. Fid. & Guar. Co.,

407 Mass. 689, 700, 555 N.E.2d 576 (1990) .............................................................................4, 11

Higginson v. Weld,

80 Mass. 165, 172, 1859 WL 7464 (1859) ....................................................................................10

Koshland v. Columbia Ins. Co.,

237 Mass. 467, 471, 130 N.E. 41 (1921) .........................................................................................4

Lumberman's Mut. Cas. Co. v. Offices Unlimited, Inc.,

419 Mass. 462, 466, 645 N.E.2d 1165 (1995) .................................................................................3

Mass. LNG, Inc. v. Indus. Nat. Leasing Corp.,

8 Mass.Rptr. 604, 1998 WL 374930, *3 (Mass. Super. Ct., July 1, 1998) ....................................10

Trustees of Tufts Univ. v. Commercial Union Ins. Co.,

415 Mass. 844, 849, 616 N.E.2d 68 (1993) ...............................................................................4, 11

Vappi & Co. v. Aetna Cas. & Sur. Co.,

348 Mass. 427, 431, 204 N.E.2d 273 (1965) ...........................................................................4, 11, 13

### Introduction

Plaintiff 148 High Street, LLC disputes Defendant's interpretation of the Policy, opposes Defendant's motion for summary judgment, and cross-moves for a summary judgment award of coverage. To prevail, Plaintiff need not show that its interpretation of the Policy is the only one or even the best one. It is enough for Plaintiff to show that an objectively reasonable insured could interpret the Policy to include coverage. Plaintiff easily makes this showing.

The Policy's basic coverage includes "Water Damage" caused by "breaking apart or cracking" of _any_ system "other than a sump." Clearly, this includes Plaintiff's damage caused by a broken or cracked roof drain system. Still, Defendant refuses to acknowledge coverage. Instead, Defendant argues that damage caused by broken/cracked roof drains is included in basic Water Damage coverage just to be "otherwise excluded" by the Water Exclusion. The argument is nonsensical.

If Defendant meant to exclude roof drains from covered Water Damage, it could, should, and logically would have done so when it defined covered systems. Rather than say coverage applies to _any_ system "other than a sump," Defendant would have said it applies to any system "other than a [roof drain or] sump." Because Defendant excluded only sumps from coverage, roof drains are covered.

Attempting to dodge coverage, Defendant broadly interprets the Policy as though damage meeting the criteria for covered Water Damage may be excluded for any reason stated in the Water Exclusion, but neither the law nor the Policy permit it. As a legal matter, the Policy's exclusionary language must be narrowly construed with any ambiguity resolved in favor of coverage. And, contrary to Defendant's broad interpretation, the Policy does _not_ say Water Damage "does not include loss or damage [] excluded under the terms of the Water Exclusion."

1

The Policy's actual language is much narrower.  It says Water Damage "does not include loss or damage ***otherwise*** excluded under the terms of the Water Exclusion." (emphasis added). According to the dictionary, "otherwise" means "in different circumstances" or "in other respects."  Defendant defined covered Water Damage in terms that include roof drains, so roof drains cannot be "otherwise excluded" just for being roof drains.  If "otherwise" means anything, it is that some different/other criteria is required for exclusion.  Tellingly, the Policy contains examples of Water Damage that is "otherwise excluded" under the Water Exclusion.  All the examples cite concurrent causation by flooding as a different/other criteria justifying invocation of the "otherwise excluded" clause.  By contrast, there is _no_ concurrent causation, flooding, or other justification for invoking the clause here.  Plaintiff's damage is covered because it falls squarely within the definition of Water Damage and _no_ exclusions apply.  Defendant's parallel references to the Policy's The Wear and Tear Exclusion are immaterial, because that exclusion is expressly inapplicable to Water Damage.

The Policy also contains extended coverage for any "Discharge from Sewer, Drain or Sump (Not Flood Related)," which provides a separate and independent basis for coverage in this case.  Defendant does not dispute that extended coverage applies in this case.  Instead, Defendant contends that it is subject to a $10,000 sublimit.  Again, Defendant ignores the legal rule that where, as here, there is more than one rational interpretation of policy language, the insured is entitled to the benefit of the one that is most favorable to it.  The Policy says that the $10,000 sublimit applies if the Declarations contain _no_ higher limit.  The Policy contains no other details about the type or location of the higher limit and, here, the Declarations contain _only_ a higher limit for losses of the sort at issue.  Accordingly, the sublimit is inapplicable.

2

For each of these reasons, and as further discussed below, Plaintiff is entitled to summary judgment in its favor, including an award of full coverage of its damage/loss in the stipulated amount of $358,114.04.

## I.  SUBSTANTIVE LAW

Plaintiff 148 High Street, LLC agrees that the Commonwealth of Massachusetts' substantive law applies in this case.

Under Massachusetts law, "[t]he proper interpretation of an insurance policy is a matter of law to be decided by a court . . ." Dorchester Mut. Ins. Co. v. Krussell, 485 Mass. 431, 437, 150 N.E.3d 731 (2020), quoting Boazova v. Safety Ins. Co., 462 Mass. 346, 350, 968 N.E.2d 385 (2012).  "Language in an insurance contract 'is no different from . . . [language in] any other contract, and we must construe the words of the policy in their usual and ordinary sense.'" Krussell, 485 Mass. at 437, quoting Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 634-635 (2013).  "We assume that every word in an insurance contract serves a purpose, and 'must be given meaning and effect whenever practicable.'" Krussell, 485 Mass. at 437, quoting Metropolitan Life, 464 Mass. at 635.

"[A]n ambiguity exists in an insurance contract when the language contained therein is susceptible of more than one meaning." Lumberman's Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466, 645 N.E.2d 1165 (1995).[1]  "In attempting to ascertain possible relevant meanings, we consider dictionary definitions . . ." Krussell, 485 Mass. at 438.

---

[1]    Accord Krussell, 485 Mass. at 437 ("a term is ambiguous where it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.") (internal cite and quotation marks omitted).

"Where, as here, there is more than one rational interpretation of policy language, 'the insured is entitled to the benefit of the one that is most favorable to it.'" Hakim v. Mass. Insurers' Insolvency Fund, 424 Mass. 275, 281, 675 N.E.2d 1161 (1997), quoting Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 849, 616 N.E.2d 68 (1993), Hazen Paper Co. v. United States Fid. & Guar. Co., 407 Mass. 689, 700, 555 N.E.2d 576 (1990).[2]

"This rule of construction applies with particular force to exclusionary provisions." Hakim, 424 Mass. at 282. "Exclusions from coverage are to be strictly construed, and any ambiguity in the exclusion must be construed against the insurer." Id., quoting Vappi & Co. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 431, 204 N.E.2d 273 (1965).

"It is [] appropriate, in construing an insurance policy, to consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Hazen Paper Co., 407 Mass. at 700; Hakim, 424 Mass. at 282 (same), Krussell, 485 Mass. at 437 (same).

---

[2]    "When for any reason there is ambiguity in the terms employed in the policy, every doubt is to be resolved against the insurer and in favor of the insured.  There are two reasons for this rule: (1) the purpose of such a contract is indemnity against the losses to which the insurance related and every rational intendment is made by law to effectuate the main design of the parties [], and (2) as a matter of common knowledge the contract is drawn by the insurer in the light of wide experience and the aid of highly skilled advisers and hence to be construed most strongly against the person using the equivocal language." Koshland v. Columbia Ins. Co., 237 Mass. 467, 471, 130 N.E. 41 (1921).

## II. FACTS

**A)**   **Background**

Plaintiff 148 High Street, LLC owns and operates an apartment building in Medford, MA, which is covered by commercial insurance purchased from Defendant Wesco Insurance Company. See Fact Nos. 1-3.[3]

On August 19, 2021, Plaintiff suffered property damage, expense, and lost rent when a pipe in the building's roof drain system broke apart and leaked water into the building and onto its contents. See Fact No. 4-5. Plaintiff promptly provided notice and submitted a claim to Defendant, given its position that the damage triggers one or more coverages under the policy:

> (i) Basic coverage applicable to "Water Damage" caused by leakage from the breaking apart or cracking of any system "other than a sump," and
>
> (ii) Expanded coverage applicable to any "Discharge from Sewer, Drain or Sump (Not Flood Related)."

See Facts No. 6; Policy, Joint SJ Ex. A.

The basic coverage applies to leakage from any system "other than a sump," so long as the leakage is caused by "breaking apart or cracking" as opposed to a run-of-the-mill back-up or overflow of a sewer or drain system. The basic coverage is subject to normal policy limits. See Policy, Special Form, Section G(2)(c)(1) at p. 238, Joint SJ Ex. A.

The expanded coverage applies to discharge from a "sewer, drain, or sump" even without breaking apart or cracking. It expands coverage of those systems to include discharge caused by anything other than flooding, including back-ups and overflows of sewer and drain systems.

---

[3]   "Facts" referenced herein are contained in the Parties' Joint Statement of Stipulated Facts.

However, the expanded coverage is subject to a $10,000 limit "unless a higher amount is shown in the [Policy] Declarations." See Policy, Endorsement, Section A(4)(o) at p. 77, Joint SJ Ex. A.

In response to Plaintiff's claim, Defendant denied basic coverage for "Water Damage" on the putative ground that so-called "water" and "wear and tear" exclusions apply. Defendant also denied expanded coverage above $10,000 on the putative ground that no higher amount is shown in the policy declarations. See Fact Nos. 7-9; Letters, Ex. B, C, D, F, G.

Contrary to the position Defendant takes in its denials and motion, Plaintiff contends that the "water" and "wear and tear" exclusions do not exclude coverage in this case, and no $10,000 limit applies including because *only* a higher amount of coverage is shown in the policy declarations. See Policy, Declarations re: Loc. No. 5 at p. 26, Ex. A; Letter, Ex. F.

Defendant's cursory discussion of the complex Policy at issues in this case might give the impression that it is susceptible to only Defendant's interpretation, but an actual step-by-step Policy analysis tells a very different story. As shown in the remainder of this brief, there are rational interpretations of the Policy that result in full coverage.

**B)      The Policy**

At all relevant times, Plaintiff and the Location were insured under Wesco Insurance Company Commercial Policy No. WPP1452386-05, having a Policy Period of 5/1/21 to 5/1/22 (the "Policy") (Joint SJ Ex. A). In this brief, Plaintiff refers to the Policy as if it were contiguously numbered from beginning to end, but it bears mention that the original Policy lacked numbering of the sort.

After the cover pages, the Policy contains Declarations comprised of 15 sections spanning 47 pages (the "Declarations"). [See Policy at 6-53.] The last of the Declaration sections is a *Commercial Common Policy Declarations Forms and Endorsements Schedule*,

which lists 48 forms and endorsements. [See Policy at 50-53.]  The scheduled forms and

endorsements, which span 238 pages, comprise the rest of the Policy.  Altogether, the Policy is

290 pages long. [See Policy, *passim*.]

**C)      The Declarations**

As is typical, the Declarations summarize key points about the voluminous Policy,

including the named insureds, the covered properties, the coverage types and limits, the policy

period, the premiums, and the policy number. [See Policy at 6-53.]

In pertinent part, the Declarations provide as follows:

a.  The *Commercial Common Policy Declarations Extension of Named Insured Section* lists Plaintiff among the named insureds. [See Policy at 8.]

b.  The *Commercial Common Policy Declarations Location Summary, Commercial Common Policy Declarations Sub-Location Address Schedule,* and *Commercial Property Description of Premises Sections* list the Location (a/k/a Location No. 5 or Premises No. 5), building, and its contents among the covered properties. [See Policy at 10, 12, 24.]

c.  The *Commercial Property Description of Coverages Provided Section* lists the coverages and applicable limits as:

1.  Building - $4,639,673 (100%),
2.  Business Income including Rental Value with Extra Expense - $450,000 (80%),
3.  Ordinance or Law B - $250,000, and
4.  Ordinance or Law C - $250,000.

Each of these coverages is subject to a $10,000 deductible. [See Policy at 26, Declarations re; Loc. No. 5.]

d.  The *Commercial Property Description of Optional Coverages Provided Section* lists the coverages and applicable limits as:

Building . . . RC    4%

Surrounding text explains that "RC" means "Replacement Cost" and the "4%" is a so-called "Inflation Guard" against rising replacement cost. [See Policy at 30.]

7

e.  The *Commercial Property Supplemental Declarations Section* lists the total annual premium for Location No. 5 as $6,492. [See Policy at 38.]

Importantly, the Declarations show *no* lesser limit for damage caused by leakage or discharge from drains.

**D)      The Challenge of Locating and Interpreting the Causes of Loss Special Form**

In pertinent part, the Policy's forms and endorsements include both a *Building and Personal Property Coverage Form (CP 00 10 10 12 (pp. 160-175))* and a *Business Income and Extra Expense Coverage Form (CP 00 30 10 12 (pp. 176-185))*, which are supplemented by a *Commercial Property Expanded Coverage Endorsement (p. 70- 87)*.

In their respective Sections A, the *Building and Personal Property Coverage* and *Business Income and Extra Expense Coverage Forms* grant coverage for any loss caused by or resulting from any Covered Cause of Loss.  Divining the meaning of Covered Cause of Loss is anything but intuitive and requires multiple steps.

a.  For a definition of Covered Cause of Loss, the *Building and Personal Property Coverage* and *Business Income and Extra Expense Coverage Forms* instruct the reader to "[s]ee applicable Causes Of Loss form as shown in the Declarations." [See, e.g., Policy at 162.]  However, the forms do not reference a particular section or page of the Declarations which, again, contain 15 sections spanning 47 pages.

b.  One section of the Declarations, entitled *Commercial Property Description of Coverages Provided*, lists Covered Causes of Loss as "Special." [See Policy at 26.]  A second section entitled *Commercial Property Supplemental Declarations* lists Covered Causes of Loss as "Special Including Theft." [See Policy at 38.]  Neither section defines Special nor instructs where the definition may be found.  A third section of the Declarations entitled *Commercial Common Policy Declarations and Endorsements Schedule* contains a list of 48 different forms.  The thirty-second of these forty-eight forms is a so-called *Cause of Loss – Special Form*. [See Policy at 50-52.]

c.  Buried over two-hundred pages deep in the Policy is the actual *Causes of Loss – Special Form (CP 10 30 09 17)*. [See Policy at 230-239].

8

d.  According to the *Causes of Loss -Special Form* (the "Special Form"), Covered Loss means a "direct physical loss unless the loss is excluded or limited in this policy." [See Policy at 230.]

If the average policyholder succeeds in navigating the above maze and finding the *Special Form*, they will find *Section G(2)* of the form also contains a list of "Specified causes of loss" having defined coverage.  It is there that Plaintiff's coverage analysis and legal argument begins in earnest.

### III.   LEGAL ARGUMENT

Plaintiff 148 High Street, LLC is entitled to basic and/or extended coverage under the Policy in the full amount of the stipulated loss.  In denying coverage, Defendant relies upon exclusions and limitations that simply do not apply.  Plaintiff will address each coverage, exclusion, and limitation in turn.

**A)  Basic Coverage for Water Damage Caused by "Breaking Apart or Cracking" in Any System**

**(i)   The Case for Coverage**

At the outset, the Policy's *Causes of Loss -Special Form* (the "Special Form") generally states that Covered Loss means a "direct physical loss unless the loss is excluded or limited in this policy." [See Policy at 230.]  In other words, Plaintiff's loss is covered unless and until Defendant proves a clearly applicable exclusion or limit.

*Special* Form, *Section G(2)* contains a list of "Specified causes of loss" subject to defined coverage.  The list includes "water damage." [Policy at 239.]  *Section G(2)(c)(1)*, defines "Water Damage" as follows:

(1)   Accidental discharge or **leakage of water or steam as the direct result of the breaking apart or cracking of a** plumbing, heating, air conditioning or other **system or appliance (other than a sump system** including its related equipment and parts), that is located on the described premises and contains water or steam . . .

9

> **But water damage does not include loss or damage <u>otherwise</u> excluded under the terms of the Water Exclusion.**  Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking.  As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear. . . [Policy at 239 (bold and underling added).][4]

By its terms, *Section G(2)(c)(1)* is specifically applicable where (as here) there is a discharge or leakage of water as a direct result of "breaking apart or cracking" of a "system [] other than a sump system . . ."  *Section G(2)(c)(1)* excludes only sump systems from coverage. If Defendant also wished to exclude drain systems (like the roof drain system at issue in this case) it could, should, and logically would have done so.  Because Defendant did *not* exclude drain systems, the drain system at issue is covered.[5]

---

[4]   Note that all the Policy's examples of "otherwise excluded" damage concern flooding as a concurrent cause of the loss, and flooding is not a cause or concurrent cause of the loss in this case.

[5]   It is a maxim of contract and statutory interpretation that "expression of one thing is an implied exclusion of other things omitted . . .". <u>Harborview Residents' Committee, Inc. v. Quincy Housing Auth.</u>, 368 Mass. 425, 432, 332 N.E.2d 891 (1975). <u>Accord</u> <u>Chatham Pharmaceuticals v. Angier Chem. Co.</u>, 347 Mass. 208, 211, 196 N.E.2d 852 (1964) (applying maxim of ""[e]xpressio unius est exclusion alterius" – <u>i.e.</u>, inclusion of one thing is exclusion of others – in interpreting contract); <u>Higginson v. Weld</u>, 80 Mass. 165, 172 1859 WL 7464 (1859) (same); <u>Mass. LNG, Inc. v. Industrial Nat. Leasing Corp.</u>, 8 Mass. Rptr. 604, 1998 WL 374930, *3 (Mass. Super. Ct., July 1, 1998) (same).

10

**(ii)** **Reasonable Insureds Would *Not* Perceive "Water Damage" Meeting the Criteria for Coverage Under Section G(2)(c)(1) As Being "Otherwise Excluded" by the "Water Exclusion"**

The above-quoted language shows that the Policy contains not only a general insuring clause but also "Water Damage" coverage defined in terms that include the damage at issue. Accordingly, Defendant bears the heightened burden of proving an applicable exclusion.[6] Defendant fails to meet its burden.

Under *Special Form*, *Section G(2)(c)(1),* Water Damage is covered unless it is "***otherwise*** excluded under the terms of the Water Exclusion" (emphasis added). "Otherwise," which qualifies the word "excluded," means "in different circumstances" or "in other respects." [See merriam-webster.com/dictionary.] As defined in *Section G(2)(c)(1)*, Water Damage includes leakage caused by breaking or cracking of any "system [] other than a sump." "[S]ystem" is defined in terms that exclude only sumps and therefore include drains. Accordingly, Plaintiff interprets that leakage caused by breaking or cracking of a drain system is covered unless excluded based on some other criteria (i.e., for something other than being a drain system).

Consistent with Plaintiff's interpretation, *Section G(2)(c)* is followed by two examples of when leakage resulting from breaking and cracking is "otherwise excluded." [Policy at 239.] It is telling that both examples involve flooding as a concurrent cause of breaking, cracking, or

---

[6]    "Where, as here, there is more than one rational interpretation of policy language, 'the insured is entitled to the benefit of the one that is most favorable to it.'" Hakim v. Mass. Insurers' Insolvency Fund, 424 Mass. 275, 281, 675 N.E.2d 1161 (1997), quoting Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 849, 616 N.E.2d 68 (1993), Hazen Paper Co. v. United States Fid. & Guar. Co., 407 Mass. 689, 700, 555 N.E.2d 576 (1990).[6] "This rule of construction applies with particular force to exclusionary provisions." Hakim, 424 Mass. at 282. "Exclusions from coverage are to be strictly construed, and any ambiguity in the exclusion must be construed against the insurer." Id., quoting Vappi & Co. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 431, 204 N.E.2d 273 (1965).

11

resulting leakage. *Section G's* definition of covered Water Damage addresses system type and includes roof drains. By contrast, *Section* G's definition does *not* address water type. *Section G* does not address/define water in terms that include flood water. The Water Exclusion excludes flooding from coverage. So, damage concurrently caused by flooding qualifies as "otherwise excluded" (i.e., excluded based on criteria not addressed in the definition of covered Water Damage). But flooding is *not* a concurrent cause of the loss in this case. Thus, Plaintiff's covered "Water Damage" is *not* "otherwise excluded under the terms of the Water Exclusion."

Again, if the drafters of *Section G(2)(c)(1)* meant to exclude roof drain systems from the definition of covered Water Damage, they could, should, and logically would have said so in terms plain to average insureds. Rather than say Water Damage includes leakage from any system "other than a sump," they would have said Water Damage includes leakage from any system "other than a [roof drain or] sump." It defies logic that the drafters would have included coverage for drains in *Section G(2)(c)(1)* just to claw it back. If they did, their approach is confusing to the point of being misleading.

Moreover, in its denials and motion, Defendant effectively ignores the word "otherwise." Defendant assigns no meaning to it, thereby rendering it superfluous. The Policy actually says "water damage does not include loss or damage ***otherwise*** excluded under the terms of the Water Exclusion." (emphasis added). But Defendant interprets the Policy as if it says "water damage does not include [any] loss or damage [] excluded under the terms of the Water Exclusion." By doing so, Defendant suggests that Water Damage coverage that might be excludable based on a subset of criteria (which do not apply here) is instead excludable based on any or all criteria contained in the Water Exclusion. Defendant's interpretation defies not only logic but also the legal presumption that every word in the Policy serves a purpose and must be given meaning and

12

effect whenever practicable. See, e.g., Dorchester Mut. Ins. Co. v. Krusell, 485 Mass. 431, 437, 150 N.E.3d 731, 738 (2020) (cases cited).  Defendant's interpretation simultaneoulsy ignores the maxim that "[e]xclusions from coverage are to be strictly construed, and any ambiguity in the exclusion must be construed against the insurer." Hakim, 424 Mass. at 282, quoting Vappi & Co. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 431, 204 N.E.2d 273 (1965).

In sum, the Policy covers "[a]ccidental discharge or leakage of water [] as the direct result of the breaking apart or cracking of a plumbing [] or other system [] other than a sump system . . ." See Causes of Loss - Special Form, Subsection G(2)(c)(1).  The defined coverage includes leakage from roof drain systems.  It is absurd to suggest that included leakage may be "otherwise excluded" just for being that which is included.

### (iii)    The "Wear and Tear Exclusion" Does *Not* Apply to Water Damage

As another putative ground for denying the basic coverage for "Water Damage" provided in the *Causes of Loss -Special Form*, Defendant alleges that a "Wear and Tear" exclusion applies.  But the exclusion does *not* apply to Water Damage.

By way of explanation, in the *Causes of Loss -Special Form*, "Covered Loss" is broadly defined as "direct physical loss unless the loss is excluded or limited in this policy." [See Policy at 159, 161, 176, 229.]  *Section B(2)*, contains a list of exclusions, including "loss or damage caused by or resulting from . . . d.(1) Wear and tear." [Policy at 231.]  However, the Wear and Tear exclusion *(Section B(2)(d)(1))* is subject to the following exception:

> But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" . . ., **we will pay for the loss or damage caused by that "specified cause of loss"** . . . [Policy at 231 (bold and underline added).]

As previously discussed, *Section G(2)* defines "specified cause of loss" as follows:

13

> **"Specified causes of loss" means** the following: . . . **water damage**.
> [Policy at 238 (bold and underline added).]

Accordingly, by establishing Water Damage in the preceding section of this brief,

Plaintiff simultaneously established that the Wear and Tear Exclusion is inapplicable.

**B)**    **Expanded Coverage for Sewers, Drains, and Sumps Without Breaking Apart or Cracking**

The *Commercial Property Expanded Coverage Endorsement* (the "Endorsement") grants

"Expanded Property Coverage" for which Defendant charged an additional premium of $150.

[See Policy at 69.]  In pertinent part, the Endorsement provides:

> **CP 00 10 – BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
> The Building And Personal Property Coverage Form is modified as follows:
>
> **A. Coverage** . . .
>
> The following are added to **4. Additional Coverages:** . . .
>
> > **o.**    Discharge From Sewer, Drain Or Sump (Not Flood Related)
> >
> > **(1)** We will pay for direct physical loss or damage to Covered Property, caused by or resulting from discharge of water or waterborne material from a sewer, drain or sump located on the described premises, provided such discharge is not induced by flood or flood-related conditions.
> >
> > The aforementioned references to flood include surface water, waves (including tidal wave and tsunami), tides, tidal water, and overflow of any body of water, including storm surge.
> >
> > For purposes of this coverage, the term drain includes a roof drain and related fixtures.
> >
> > **(2)** We will pay for business income loss and/or extra expense in accordance with the terms of the Coverage Form applicable to such premises under your policy, when such loss or expense arises out of the direct physical loss or damage described in Paragraph **(1)**
> >
> > **(3)** There is no coverage if:

14

(a)     The discharge results from an insured's failure to perform routine maintenance or repair necessary to keep a sewer or drain or a sump, sump pump or related equipment free from obstruction and in proper working condition.  This limitation does not apply to sudden mechanical breakdown of a sump pump or its related equipment, provided the breakdown is not the result of an insured's negligence; or

(b)     Sump pump failure is caused by or results from failure of power, unless this policy is endorsed to cover power failure affecting the described premises.

**(4)** To the extent that the Water Exclusion might conflict with the coverage provided under this endorsement, the Water Exclusion does not apply to such coverage.

**(5)** We will not pay the cost of repairing or replacing a sewer, drain, sump, sump pump or any related parts or equipment.

The most we will pay for Discharge from Sewer, Drain, or Sump in any policy year is **$10,000**, unless a higher amount is shown in the Declarations.

[See Policy at 70, 71, 77 (bold in original, underline added).]

By its terms, the expanded coverage is applicable to any discharge from a sewer, drain or sump provided it is not flood related.  The expansion is that it provides coverage even without breaking apart or cracking.  The Endorsement provides this "Additional Coverage" in exchange for an additional premium.  It does *not* limit or reduce basic coverage provided by other parts of the Policy.

Defendant does not dispute that the expanded coverage applies here, but it contends that it owes only the $10,000 sublimit and refuses to pay anything more.

Defendant should pay Plaintiff's claim without regard to the $10,000 limit, because the limiting language indicates, without further elaboration or explanation, that it does *not* apply where "a higher amount is shown in the Declarations." [See Section A(4)(o)(5), Policy at 78.] Here, a higher amount of coverage is shown in the Declarations.  For damage to the Building, the

15

amount is replacement cost up to $4,639,673 subject to a 4% upward adjustment for inflation. For Business Income including Rental Value with Extra Expense, the amount is $450,000. No exception or exclusion is shown for drains. [See Policy at 26, 30.] Based on this language, Plaintiff reasonably interprets that it is entitled to the higher amount of coverage shown in the Declarations and reasonably expects indemnification in the higher amount.

For its part, Defendant interprets the Policy as though it says a higher limit must be shown under a certain heading or in a certain location on the Declarations pages, but that is wishful thinking, because it is *not* what the Policy says. The Policy says the $10,000 sublimit applies "unless a higher amount is shown in the Declarations." Again, a higher amount, and *only* a higher amount, is shown in the Declarations. Where, as here, a Policy is unclear, the insured is entitled to the benefit of every reasonable inference in its favor. See Footnote 5, above.

For this additional reason, Plaintiff is entitled to full payment of the stipulated loss.

### Conclusion

In summary, Plaintiff 148 High Street, LLC's claim is fully covered under the Policy's basic and extended coverages.

Basic coverage applies up to Policy limits because Covered Causes of Loss include Water Damage, which includes "leakage of water [] as the direct result of the breaking apart or cracking of a [] system or appliance (other than a sump system . . .) . . .," unless the Water Damage is "otherwise excluded" under terms of the Policy's Water Exclusion.

Plaintiff's claim is attributable to a Covered Cause of Loss, because it is for "Water Damage" caused by "leakage of water [] as the direct result of the breaking apart or cracking of" a roof drain system, which is a "system or appliance (other than a sump system . . .) . . ." [Policy at 238.] Further, as discussed in Section III(A) of this brief, Water Damage coverage is *not*

16

"otherwise excluded" by terms of the Water Exclusion because the "otherwise" requirement for invoking the exclusion is not met in this case.  Further still, Water Damage is not subject to the Wear and Tear Exclusion.

Extended coverage applies up to Policy limits too because, by its terms, the $10,000 sublimit applies to this coverage "unless a higher amount is shown in the Declarations," and only a higher amount is shown in the Declarations.

For each of the foregoing reasons alone and in conjunction, Plaintiff respectfully requests entry of summary judgment in its favor, including an award of damages in the stipulated amount of $358,114.04.

Respectfully submitted,

PLAINTIFF 148 HIGH STREET, LLC,
By its attorney,
/s/ *Edward J. Denn*
Edward J. Denn (BBO #633020)
Denn Law Group LLC
2 Dundee Park Drive, Suite 102
Andover, MA 01810
Tel.: 978-252-4567
Date: November 22, 2024          Email: edenn@dennlawgroup.com

Certificate of Service

On November 22, 2023, I served a true copy of the foregoing document, via email and the court's electronic filing and service system, to counsel of record for all other parties to this action, i.e., Alexander G, Henlin, Esq. (Alexander.Henlin@MCGLaw.com).

/s/ *Edward J. Denn*
Edward J. Denn, Esq.

17