UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                )
148 HIGH STREET, LLC,           )
                                )
              Plaintiff,        )
                                )
      v.                        )         CIVIL ACTION
                                )         No. 23-12008-WGY
WESCO INSURANCE COMPANY,        )
                                )
              Defendant.        )
                                )
```

YOUNG, D.J.                                      June 5, 2025

**FINDINGS OF FACT, RULINGS OF LAW, AND ORDER FOR JUDGMENT**

I.    **INTRODUCTION**

148 High Street, LLC ("148 High") initiated this action for breach of contract (Count I) and declaratory judgment (Count II), following Wesco Insurance Company's ("Wesco") denial of its insurance claim. Pl.'s Compl., ECF No. 1-1; First Am. Compl., ECF No. 9. Wesco moved for summary judgment, asserting that 148 High's insurance policy's (the "Policy") "water" and "wear and tear" exclusions bar coverage, and that 148 High's claim is limited to $10,000 through the Policy's Expanded Property Coverage endorsement. Def.'s Mot. Summ. J., ECF No. 35; Mem. Law Supp. Def.'s Mot. Summ. J. ("Def.'s Mem."), ECF No. 36. 148 High filed an opposition and cross-motion for summary judgment, arguing that the exclusions do not apply, and that the endorsement provides additional coverage for the full amount of

the damages.  Pl.'s Opp'n & Cross-Mot. Resp. Def.'s Mot. Summ.
J. ("Pl's Opp'n"), ECF No. 41.  These motions were fully
briefed.  Def.'s Opp'n Pl.'s Cross-Mot. Summ. J. & Reply Supp.
Mot. ("Def.'s Reply"), ECF No. 42; Pl.'s Reply Supp. Cross-Mot.
Summ. J. ("Pl.'s Reply"), ECF No. 43.

This Court held a hearing on both motions on January 21,
2025.  Elec. Clerk's Notes, ECF No. 44.  At that hearing, the
parties stipulated to proceed on a case stated basis.  The Court
dismissed Count II as moot and took the remainder under
advisement.  Id.

After considering the record and the parties' arguments,
this Court rules in favor of 148 High's breach of contract
claim; 148 High's claim is covered under the general terms of
the policy, up to the Policy's general limit.

## II.  **FINDINGS OF FACT**

The parties stipulated to, and the Court adopts and finds,
the Joint Statement of Stipulated Facts ("SF"), ECF No. 37.  The
facts recited here are taken almost verbatim from that
statement, and are not quoted for readability.

### A.  **The Parties**

The plaintiff 148 High owns and operates an apartment
building located in Medford, Massachusetts.  SF ¶ 1.

148 High is insured under a property insurance policy
issued to 104-106 Fellsway West LLC by the defendant Wesco, No.

[2]

WPP1452386 05, which was in force for the period from May 1, 2021, to May 1, 2022.  Id. ¶ 2.

The Policy insures 148 High's apartment building.  Id. ¶ 3.

### B.    The Roof Drain

On August 19, 2021, a pipe in the apartment building's roof drain system, situated beneath the building's roof deck but above the ceiling of its top floor, cracked or broke apart at an elbow joint, allowing water from a rainstorm to leak into the building.  Id. ¶¶ 4-5.  The break or crack was attributable to some combination of normal use and latent wear of the joint. Id. ¶ 5.

### C.    The Claim

148 High thereafter submitted a claim under the Policy to Wesco, which Wesco acknowledged in writing on August 25, 2021. Id. ¶ 6.

Wesco subsequently sent 148 High a reservation of rights letter dated August 30, 2021.  Id. ¶ 7.

On or about December 29, 2021, Wesco issued a check to 148 High for $10,000 in connection with the claim, together with a letter explaining the basis for the payment.  Id. ¶ 8.  The letter states:

> We have issued the coverage limit of $10,000 under the Extended Property Endorsement for loss caused by discharge of a drain.

[3]

> Per our conversation, the coverage simply states "we will pay for direct physical loss or damage to Covered Property, caused by or resulting from discharge of water . . . . from a sewer, drain or sump located on the described premises . . . . For the purpose of this coverage, the term drain includes a roof drain and related fixtures.

> At this time we feel this concludes our claim.

Decl. Att'y Alexander G. Henlin Supp. Def.'s Mot. Summ. J.
("Henlin Decl."), Ex. D, Explanation of Payment 2, ECF No. 38-4.
On January 25, 2022, Wesco issued a letter in which it denied
further liability for the claim, and stated its reasons for that
denial. SF ¶ 9. The letter cites the Policy's water exclusion
and wear-and-tear exclusion as grounds for denial of coverage,
and cites to the Expanded Property Coverage endorsement, stating
in part:

> the loss or damage to the insured premises was caused by water that was discharged by a cracked drainpipe. The cracked drainpipe is apart of the drain and/or its related equipment. To the extent that the loss or damage to the insured premises was caused by water discharged from a drain, drainpipe or its related equipment including the drainpipe, no coverage is available as set forth in the above-cited policy provision.

> . . . .

> To the extent that the loss or damage to the insured premises is caused by accidental discharge of water from breaking apart or cracking in a plumbing system **_and_** that accidental discharge or leakage falls within the criteria set forth in c. (1) or c. (2) of [the Policy's] definition of "specified causes of loss," coverage would otherwise be available for this matter. However, the accidental discharge or leakage in this matter does not fall within the criteria set forth in c. (1) or c. (2) of this definition of "specified causes of loss."

Specifically, to the extent that the loss or damage was not caused by a discharge from a pipe located off the described premises and connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located, the water exclusion still applies and no coverage is available as set forth in the above-cited policy provision.

. . . .

No coverage is available for this loss as set forth in the above-cited policy provisions for the CP 10 30 09 17 Causes of Loss – Special Form. However, policy form 31-1216 0417 Commercial Property Expanded Coverage does afford coverage for this matter but only for the amount of $10,000.00. Once again, payment of this amount has been issued to Fellsway. Accordingly, Wesco is disclaiming any further coverage of this matter for the reasons set forth above.

Henlin Decl., Ex. E, Disclaimer of Further Liability 3-6, ECF No. 38-5. 148 High disputes Wesco's position. SF ¶ 10.

For purposes of this action, the parties have agreed that the value of 148 High's claim is $358,114.04 on an actual-cash value basis, and $413,689.21 on a replacement-cost value basis. Id. ¶ 12.

## III. RULINGS OF LAW

### A. Case Stated

As stated above, the parties here are proceeding case stated. "Case stated hearings provide an efficacious procedural alternative to cross motions for summary judgment." Moitoso v. FMR LLC, 451 F. Supp. 3d 189, 198 (D. Mass. 2020) (quoting

Sawyer v. United States, 76 F. Supp. 3d 353, 356 (D. Mass. 2015)). "In a case stated, the parties waive trial and present the case to the court on the undisputed facts in the pre-trial record." Sánchez-Rodríguez v. AT & T Mobility P.R., Inc., 673 F.3d 1, 10-11 (1st Cir. 2012) (quoting TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 n.6 (1st Cir. 2007)). Although the case stated framework entitles the court to "engage in a certain amount of factfinding," id. at 11, "case stated hearings usually involve but a modicum [thereof] -- nothing more than the drawing of reasonable inferences," Moitoso, 451 F. Supp. 3d at 199. Unlike at summary judgment, "the Court is relieved of drawing all inferences against each moving party, instead drawing such inferences as are reasonable to resolve the case." Chiocca v. Town of Rockland, No. 19-10482-WGY, 2022 WL 4817094, at *16 (D. Mass. Oct. 3, 2022) (quoting Bunch v. W.R. Grace & Co., 532 F. Supp. 2d 283, 287 (D. Mass. 2008)).

**B.   Interpretation of Insurance Contracts**

As this case is in federal court by virtue of diversity jurisdiction, state law provides the substantive rules of this Court's decision. See Torres-Ronda v. Nationwide Mut. Ins. Co., 18 F. 4th 80, 84 (1st Cir. 2021); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The parties agree that Massachusetts law governs the interpretation of the Policy. See Def.'s Mem. 6; Pl's Opp'n. 3. The task for this Court is therefore to apply

[6]

Massachusetts law as interpreted by the state's highest judicial
authority, that is, the Massachusetts Supreme Judicial Court,
"or, in questions to which that tribunal has not responded, [to
make] an informed prophecy of what the court would do in the
same situation." Aubee v. Selene Fin. LP, 56 F.4th 1, 4 (1st
Cir. 2022).

"Interpretation of an insurance contract is a matter of law
for a judge, not a matter of fact for the jury." A & W Maint.,
Inc. v. First Mercury Ins. Co., 91 F. Supp. 3d 113, 121 (D.
Mass. 2015) (citing Cody v. Connecticut Gen. Life Ins. Co., 387
Mass. 142, 146 (1982)). Coverage provisions are generally
entitled to liberal construction in favor of coverage, while
exclusionary provisions are subject to a narrow construction
against the insurer. Id. at 126; see also Central Mut. Ins. Co.
v. Boston Tel., Inc. 486 F. Supp. 2d 180, 184 n.3 (D. Mass.
2007). The Court "also 'consider[s] what an objectively
reasonable insured, reading the relevant policy language, would
expect to be covered.'" Zurich Am. Ins. Co. v. Medical Props.
Tr., Inc., 494 Mass. 382, 387 (2024) (quoting Dorchester Mut.
Ins. Co. v. Miville, 491 Mass. 489, 493 (2023)). "If the
language of an insurance policy is unambiguous, then [the Court]
construe[s] the words in their usual and ordinary sense." Id.
386-87 (quoting Vermont Mut. Ins. Co. v. Poirier, 490 Mass. 161,
164 (2022)). "However, if the policy language is ambiguous,

[7]

'doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured,'" which "rule of construction applies with particular force to exclusionary provisions." Id. (first quoting Green Mountain Ins. Co. v. Wakelin, 484 Mass. 222, 226 (2020); and then quoting Miville, 491 Mass. at 493). A term is ambiguous only if it can be interpreted in more than one way by reasonably intelligent persons, not simply because the parties disagree on its meaning. Id.; see also Vermont Mut., 490 Mass. at 164-65. "The [C]ourt must also 'assume that every word in an insurance contract serves a purpose, and must be given meaning and effect whenever practicable.'" Verveine Corp. v. Strathmore Ins. Co., 489 Mass. 534, 538-39 (2022) (quoting Dorchester Mut. Ins. Co. v. Krussell, 485 Mass. 431, 437 (2020)).

Courts should not look to extrinsic evidence first, but rather "to the contested language and to the text of the insurance policy as a whole." Zurich, 494 Mass. at 387 (cleaned up). To ascertain possible relevant meanings, courts may look to the case law to determine "whether courts have adopted a consistent interpretation." Id. at 388.

### C. Burden of Proof

"As a general matter, in Massachusetts, the insured bears the 'initial burden of showing that the case involves a generally covered risk under the policy.'" Easthampton

[8]

Congregational Church v. Church Mut. Ins. Co., 916 F.3d 86, 91
(1st Cir. 2019) (quoting Stor/Gard, Inc. v. Strathmore Ins. Co.,
717 F.3d 242, 247 (1st Cir. 2013)).  "Where . . . the parties do
not dispute that the incident was a generally covered risk, the
burden shifts such that the insurer must demonstrate that an
exclusion precludes coverage.  'And if the insurer satisfies
that burden, the burden shifts back to the insureds'" to show
that an exception applies.  Id. (first quoting Clark Sch. for
Creative Learning, Inc. v. Philadelphia Indem. Ins. Co., 734
F.3d 51, 55 & n.1 (1st Cir. 2013); and then quoting Stor/Gard,
717 F.3d at 247).  The First Circuit has observed that "[u]nder
Massachusetts law, courts should err on the side of the
narrowest plausible interpretation of the exclusion and resolve
doubts about the scope of an exclusion in favor of the insured."
Performance Trans., Inc. v. General Star Indem. Co., 983 F.3d
20, 25 (1st Cir. 2020).

### D.    Whether the Damage is Generally Covered Under the Policy

First, 148 High has met its initial burden of demonstrating
that the damage at issue is covered under the general terms of
the Policy.  The Policy is an all-risk policy which states that
"Covered Causes of Loss means direct physical loss unless the
loss is excluded or limited in this policy."  Henlin Decl., Ex.
A, Insurance Policy ("Policy") 229, ECF No. 38-1.  The burden

therefore shifts to Wesco to demonstrate that an exclusion precludes coverage. Clark Sch., 734 F.3d at 55 n.1. Wesco cites two exclusions: the water exclusion, and the wear-and-tear exclusion. Def.'s Mem. 2-3. If an exclusion unambiguously applies, the burden shifts back to 148 High to identify an applicable exception. Nascimento v. Preferred Mut. Ins. Co., 478 F. Supp. 2d 143, 147 & n.6 (D. Mass. 2007) (Ponsor, J.).

      **1.   The Water Exclusion**

      The Policy excludes damage caused "directly or indirectly" by "Water," "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Policy at 229-30. "Water" is defined as:

> (1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);
> (2) Mudslide or mudflow;
> (3) **Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;**
> (4) Water under the ground surface pressing on, or flowing or seeping through: (a) Foundations, walls, floors or paved surfaces; (b) Basements, whether paved or not; or (c) Doors, windows or other openings; or
> (5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

Id. at 230 (the "Water Exclusion") (emphasis added). The Policy further states that the Water Exclusion applies

regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

Id. The question here is whether this Water Exclusion unambiguously encompasses the water damage caused by the broken roof drain on August 19, 2021. Reading the Policy as a whole, this Court rules, a reasonably intelligent insured would not necessarily assume that a roof drainage system falls under the Water Exclusion.

Notably, the Policy's Expanded Property Coverage endorsement (the "Endorsement") explicitly adds coverage for "Discharge From Sewer, Drain Or Sump (Not Flood Related)" and, in that context, clarifies that "[f]or the purpose of [the Expanded Property Coverage endorsement], the term drain includes a roof drain and related fixtures." Policy 77. This Endorsement language strongly suggests that, absent that clarification, the term "drain" in the standard policy might not plainly include a roof drain. In other words, the Policy itself recognizes that the word "drain" could be understood in more than one way.

Consequently, there is ambiguity as to whether the Water Exclusion's reference to water discharged from a "drain" or "related equipment" encompasses water discharged from a broken

[11]

roof drain.  Where, as here, a policy term is subject to more than one reasonable interpretation, Massachusetts law requires that the ambiguity be resolved in favor of the insured and against application of the exclusion.  See Zurich, 494 Mass. at 387.  On this basis alone, the Water Exclusion would not bar coverage for 148 High's loss.

For the sake of completeness, and as instructed by the Supreme Judicial Court, the Court also looks to decisions from other jurisdictions and secondary sources to see if they shed light on the common understanding of "drain" in this context.  See id. at 388 & n.6, 390-93.

Here, these sources reveal a lack of uniformity, confirming that the term is not used in a single, uniform sense.  Wesco relies on one out-of-district case, SJN Props. LLC v. Harleysville Ins. Co., 738 F. Supp. 3d 405, 415 (S.D.N.Y. 2024), which held that a sink drain fell under a similar water exclusion as an unambiguous example of a "drain."  Def.'s Mem. 8-9.  That case is distinguishable: a sink drain is part of a building's internal plumbing, connected to a sewer system, whereas a roof drainage system channels rainwater off the roof and typically is not connected to a public sewer.[1]  Thus, a

---

[1] Indeed, it is generally unlawful in many communities to connect roof runoff drains or similar into the sewer system, due to inflow and flooding concerns.  See Anglo Fabrics Co. v. Town of Webster, No. 942629A, 2002 WL 31187829, at *4 (Mass. Super.

court's analysis of ordinary plumbing fixtures like sink drains
does not plainly extend to roof drains.

Wesco argues in the alternative that roof drains fall
within the meaning of "related equipment." Def.'s Mem. 9. In
support, Wesco cites to an unpublished New Jersey state court
decision, Baran v. New Jersey Mfrs. Ins. Co., No. A-1707-09T3,
2010 WL 4449728 (N.J. Super. Ct. App. Div. Nov. 9, 2010). Id.
In Baran, the dispute centered around whether a pipe leading
from a sump pump to a location outside the house constituted
equipment related to the sump pump under the policy's definition
of "related equipment." 2010 WL 4449728, at *1. The court
concluded that "related equipment" in the context of a sump pump
refers to the equipment needed to make the sump pump function,
and necessarily included the pipe connected to the sump pump.
Id.

Adopting Wesco's broad reading of "related equipment" here,
so as to treat a roof drainage pipe as equipment related to a
drain or sump, would stretch the term beyond its context and
would contradict Massachusetts principles that policy exclusions
be read narrowly. See Nautilus Ins. Co. v. Jabar, 188 F.3d 27,
30 (1st Cir. 1999) ("A purely literal interpretation of this

---

July 1, 2002) (McCann, J.); see generally Northeastern Assocs.
Eng'rs, Inc. v. McDonough, No. 04-1575, 2007 WL 2416326, at *2
(Mass. Super. May 24, 2007) (Lu, J.).

[13]

language . . . would surely stretch the intended meaning of the policy exclusion").

In fact, Baran supports this conclusion, as the court in that case states that "the **only** reasonable construction of the term 'related equipment' in the exclusion of 'a sump, sump pump or related equipment' from the definition of the 'plumbing system' encompasses the piping and other related equipment needed to discharge the water flowing out of a sump pump." Baran, 2010 WL 4449728, at *1 (emphasis added).  That is not the situation here.

Furthermore, opinions from other jurisdictions underscore that the term "drain" does not have a single, uniform meaning. Compare CC 145 Main, LLC v. Union Mut. Fire Ins. Co., 176 N.H. 97, 102 (2023) (holding that the term "drain" did not unambiguously encompass internal drains), and Chima Enter. Inc. v. Chubb Nat'l Ins. Co., No. 3:23-cv-1331, 2024 WL 4349034, at *9 (D. Conn. Sept. 30, 2024) (same), with John Mezzalingua Assocs., LLC v. Travelers Indem. Co., 182 N.Y.S.3d 408, 412 (App. Div. 2022) (finding that the term "drain" encompasses "interior roof drains"); see generally 11 Jordan R. Plitt et al., Couch on Insurance § 153:50 (3d ed. 2024) (noting varying interpretations of water damage exclusions); Zurich, 494 Mass. at 391 (recognizing Couch on Insurance as a "leading treatise" on policy interpretation).

[14]

Accordingly, the Court concludes that the Water Exclusion is ambiguous as matter of law, as applied to the water damage caused by the failure of 148 High's roof drain. See generally Nautilus, 188 F.3d at 30 (citing authority for the proposition that the same exclusionary clause can be ambiguous in one context, but unambiguous in another). Resolving ambiguity in favor of coverage, as it must, this Court rules that the Water Exclusion cannot be used to deny 148 High's claim. The water damage at issue is therefore covered unless some other exclusion precludes coverage.

### 2. The Wear-and-Tear Exclusion

The Policy also excludes damage resulting from wear-and-tear, stating in relevant part:

> 2. We will not pay for loss or damage caused by or resulting from any of the following:
> . . .
> d. (1) Wear and tear;
> (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself[.]

Policy 231 (the "Wear-and-Tear Exclusion"). It is undisputed that the roof drain's failure was attributable to some combination of normal use or latent wear of the joint. SF ¶ 5. Standing alone, that would trigger the exclusion. Thus, Wesco has met its burden of showing the prima facie applicability of the Wear-and-Tear Exclusion, shifting the burden back to 148

High to identify an exception to this exclusion that would reinstate coverage.

As 148 High identifies, the Wear-and-Tear Exclusion is subject to an exception. Pl.'s Opp'n 13. The Policy's special causes of loss form provides that if an excluded cause of loss, such as wear and tear, results in a "specified cause of loss," the insurer will cover the loss cause by that specified cause of loss. Policy 231. Among the Policy's enumerated "specified causes of loss" is "water damage." Id. at 238. "Water Damage" is defined, as is relevant here, as "[a]ccidental discharge or leakage of water . . . as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts)." Id.

Here, the broken roof drain pipe fits squarely within that definition of "water damage," i.e., a sudden discharge of water as a direct result of a breakage of a plumbing or other system. Wesco does not dispute that the building's roof drainage system qualifies as a "plumbing . . . or other system" for purposes of this provision. Cf. Albrite Carpets, Inc. v. Travelers Prop. Cas. Co. of Am., No. 08-cv-10723, 2010 WL 3749457, at *2 (D. Mass. Sept. 22, 2010) (Saris, J.) (holding that damage from rainwater leaking through a roof was not within a similar water-damage exception because a roof itself is not a "system or

[16]

appliance" and does not contain water or steam); see generally Cheer Pack N. Am., LLC v. Valley Forge Ins. Co., No. 15-14135, 2017 WL 1552315, at *6 (D. Mass. Apr. 28, 2017) (Saylor, J.) ("Because it is an exception to an exclusion, any ambiguity must be construed against the insurer, so as to broaden the exception and provide coverage.").

Additionally, as Wesco identifies, the definition of "water damage" incorporates a limited caveat with respect to the Water Exclusion: it states that "water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion." Policy 238. In other words, if the water that causes damage is a type that is excluded by the Water Exclusion (for example, surface flood water), then the loss remains excluded despite being "water damage." The Policy gives examples of water perils that are "otherwise excluded" in this manner, such as water damage cause by weather-induced flooding. Id. This provision essentially prevents the water-damage exception from providing coverage for flood-type losses that are meant to be excluded.

In 148 High's case, the water that caused the damage came from an external building plumbing system (the roof drain) as a result of an accidental break, not from an external flood or surface water. Thus, the caveat to the water-damage definition is not implicated here.

[17]

In sum, even if the roof drain's failure was attributable to wear and tear, 148 High has met its burden of demonstrating that the damage resulted in a "specified cause of loss," thus falling under an exception to the Wear-and-Tear Exclusion. Because Wesco has failed to show that the Water Exclusion unambiguously applies to 148 High's roof drain incident, and because 148 High has shown that the "water damage" exception to the Wear-and-Tear exclusion applies, the claimed loss is not excluded under the Policy's terms.

### 3. The Expanded Property Coverage Endorsement

Having determined that 148 High's loss is covered under the Policy's general provisions, notwithstanding the exclusions, this Court turns to the remaining dispute as to the extent of coverage -- specifically, the effect of the Policy's Expanded Property Coverage Endorsement and its $10,000 sublimit for damage from sewer, drain, or sump discharge. See Policy 70, 77 (the "Endorsement"). The parties agree that this Endorsement applies to the loss,[2] but they disagree as to whether the $10,000 cap in the Endorsement limits 148 High's total recovery for this claim. Def.'s Mem. 12-14; Pl.'s Opp'n 14-16.

The Endorsement in the Policy provides additional coverage for "Discharge from Sewer, Drain or Sump (Not Flood Related),"

---

[2] Wesco voluntarily invoked the Expanded Property Coverage Endorsement. Def.'s Mem. 1.

[18]

and states, in relevant part, "[t]he most we will pay for Discharge from Sewer, Drain or Sump in any policy year is $10,000, **unless a higher amount is shown in the Declarations**." Policy 77 (emphasis added).

The Endorsement's specific inclusion of roof drains within the definition of "drain" has already been noted.  See supra Section III.B.1.  The critical language is that which specifies that the $10,000 limit applies "unless a higher amount is shown in the Declarations."  Id.

148 High argues that this clause means that the $10,000 sublimit does not apply because the Policy's Declarations page shows a higher general policy limit that is applicable to the property damage, far in excess of $10,000.  Pl.'s Opp'n 15–16. In other words, since the Declarations include a property coverage limit higher than $10,000, 148 High contends, this is a "higher amount," rendering the $10,000 sublimit inoperative and allowing the full loss amount to be covered up to the overall policy limit.  See id.

Wesco, by contrast, reads the Endorsement to mean that the $10,000 sublimit applies unless the Declarations specifically list a different sublimit for "Discharge from Sewer, Drain or Sump" coverage.  Def.'s Mem. 13–14; Def.'s Reply 8.  As no such specific higher sublimit is listed for this coverage on the

[19]

Declarations, Wesco maintains that the $10,000 cap remains in force.

Here, considering what an objectively reasonable insured reading the relevant policy language would expect to be covered, see Zurich, 494 Mass. at 387, the Court rules that the only reasonable interpretation of the Endorsement's sublimit is that a higher limit must be specifically listed in the Declarations for this coverage in order to override the default $10,000 sublimit. In context, the clause anticipates the possibility that the insurer and insured might agree to increase this particular sublimit and reflect that higher sublimit on the declarations page. See Ken's Foods, Inc. v. Steadfast Ins. Co., 491 Mass. 200, 209 (2023) (declining to "rewrite the insurance contract and reallocate the risks negotiated by the parties"). While the phrasing of "unless a higher amount is shown in the Declarations," Policy 77, is somewhat inartful, it cannot reasonably be taken to mean that any higher policy limit appearing anywhere in the Declarations overrides the $10,000 sublimit.

As to this case, because the Declarations page of the Policy does not show any higher coverage amount specific to losses from drains or sewers, the $10,000 sublimit set by the Endorsement was properly applied, and, absent a specific alternate limit, the $10,000 per-year cap remains effective.

[20]

See <u>Ken's Foods</u>, 491 Mass. at 209; <u>see also</u> <u>Stormo</u> v. <u>State</u>
<u>Nat'l Ins. Co.</u>, No. 19-10034-FDS, 2021 WL 11652293, at *8 (D.
Mass. Jan. 25, 2021) (Saylor, C.J.) ("Reading the provision as
plaintiff urges . . . is a strained and awkward reading that
ignores the basic structure and language of the policy.").

### 4. Coverage Is Not Limited to $10,000

Crucially, however, the application of this $10,000
sublimit does not mean that 148 High's recovery for the loss is
limited to $10,000.  The Endorsement provides an **additional**
$10,000 in coverage for drain-related water losses that might
otherwise be excluded as "water" under the general terms of the
policy.  Policy 77.  The Policy also contains a provision that
states that "[i]f two or more of this policy's coverages apply
to the same loss or damage, we will not pay more than the actual
amount of the claim, loss or damage sustained."  Policy 86, 185;
<u>see also</u> <u>In re Covington Lodging Inc.</u>, 635 B.R. 675, 705 (Bankr.
N.D. Ga. 2021) (holding that recovery was not limited to an
endorsement's sublimit when the general terms of the policy
provided coverage).  Here, because the Court has determined that
the general terms of the Policy cover the loss, the remainder of
148 High's loss beyond $10,000 is covered under the Policy's
general coverage provisions, up to the applicable policy limit.

[21]

## IV.    CONCLUSION

On the case-stated record, the Court has made the following findings and rulings:

The water exclusion does not unambiguously apply to 148 High's roof drain, 148 High has met its burden of identifying an applicable exception to the Wear-and-Tear Exclusion, and, although the Endorsement's $10,000 coverage limit remains in force, the remainder of 148 High's claim is covered under the general terms of the policy, up to the Policy's general limit.

For the foregoing reasons, judgment on the case stated enters for 148 High.

**SO ORDERED.**

*William B. Young*
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[3]

---

[3] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 47 years.